IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-06-00344-CV

 

In the
Interest of A.R.R. and D.M.T., Children

 

 

 

 



From the 13th District Court

Navarro County, Texas

Trial Court No. 05-00-14621-CV

 



MEMORANDUM  Opinion



 








Following a bench trial, the trial court terminated
Natasha Thomas’s parental rights to her children A.R.R. and D.M.T.  In one
point of error, Thomas challenges the factual sufficiency of the evidence to
support findings under section 161.001(1)(D), (E), (F), and (O) of the Family
Code and findings that termination is in the best interest of each child.  We
affirm.

Standard of Review and
applicable law

            Under factual sufficiency review in termination cases,
we consider whether the evidence is such that a factfinder could reasonably
form a firm belief or conviction about the truth of the matter on which the
petitioner bears the burden of proof.  See In re
C.H., 89 S.W.3d
17, 25 (Tex. 2002).  We must give due consideration to evidence that
the factfinder could reasonably have found to be clear and convincing.  In re
J.F.C., 96
S.W.3d 256, 266 (Tex. 2002).

A court of appeals should consider whether
disputed evidence is such that a reasonable factfinder could not have resolved
that disputed evidence in favor of its finding. If, in light of the entire
record, the disputed evidence that a reasonable factfinder could not have
credited in favor of the finding is so significant that a factfinder could not
reasonably have formed a firm belief or conviction, then the evidence is
factually insufficient. A court of appeals should detail in its opinion why it
has concluded that a reasonable factfinder could not have credited disputed
evidence in favor of the finding.

 

Id. at 266-67 (footnotes
and citations omitted).  We view the evidence in a neutral light.

            In
a proceeding to terminate the parent-child relationship, the movant must
establish two elements by clear and convincing evidence: (1) one or more acts
or omissions enumerated under subsection
(1) of section 161.001 (termed a predicate
violation); and (2) that termination is in the best interest of the child.  See
Tex. Fam. Code Ann. § 161.001
(Vernon Supp. 2006); see also In
the Interest of T.N.F., 205
S.W.3d 625, 629 (Tex. App.—Waco 2006, pet. denied).  The fact finder must find both elements are
established by clear and convincing evidence, and proof of one element does not
relieve the petitioner of the burden of proving the other.  T.N.F.,
205 S.W.3d at 629.  If multiple
predicate violations were found in the trial court, we will affirm based on any
one ground because only one predicate violation is necessary to a
termination judgment.  Id.

Environmental
Endangerment

A trial court may order termination of the
parent-child relationship if the court finds by clear and convincing evidence
that the parent has knowingly placed or knowingly allowed the child to remain
in conditions or surroundings which endanger the physical or emotional
well-being of the child.  Tex. Fam. Code
Ann. § 161.001(1)(D).
 “Endanger” means to expose to loss or injury or to jeopardize.  Texas
Dep't of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987).  Threat
means more than a threat of metaphysical injury or the possible ill effects of
a less-than-ideal family environment.  Id.  Although subsection D
addresses the child’s surroundings rather than the parent’s conduct, conduct by
a parent or other resident of a child’s home can produce an environment that
endangers the physical or emotional well-being of a child.  See In the
Interest of C.L.C., 119 S.W.3d 382, 392-93 (Tex. App.—Tyler 2003, no pet.).

The Department first encountered Thomas when her
first child, C.T., tested positive for marihuana at birth.  C.T. was removed from
Thomas’s care and placed with her grandmother.[1] 
A.R.R. tested positive for cocaine at birth and was likewise removed from
Thomas’s care and placed with her grandmother.  Two years later, D.M.T. tested
positive for marihuana at birth.  A.R.R. was living in Thomas’s home at this
time.  The Department took custody of A.R.R. and D.M.T.

Thomas contends that D.M.T. was removed from her
care shortly after birth and A.R.R. was healthy, clean, and cared for when the
Department intervened; thus, the children were never placed in living
conditions that endangered their well-being.  However, Thomas admitted using
drugs during pregnancy, despite her knowledge that prenatal drug use could
cause harm to an unborn child.  The record also indicates that Thomas used drugs
while in possession of A.R.R.

A parent’s illegal drug use “supports the
conclusion that the children’s surroundings endangered their physical or
emotional well-being.”  In the
Interest of D.C., 128 S.W.3d
707, 715-16 (Tex. App.—Fort Worth 2004, no pet.).  The fact that A.R.R.
was not physically neglected does not negate a finding that her environment
endangered her physical and emotional well-being.  See In
the Interest of A.B., 125 S.W.3d
769, 776 (Tex. App.—Texarkana 2003, pet. denied) (substance abuse “lends itself to an unstable home environment”).  Nor does the fact that neither child was born with
defects negate a similar finding.  Both children tested positive for narcotics
at birth.[2] 
Thomas’s prenatal use of narcotics exposed her children to injury.  See also
Boyd, 727 S.W.2d at 533.

Thomas claims that she is “changing her
environment” and avoiding drugs and “drug-type people.”  Richard Boyer,
Thomas’s counselor, testified that this indicates that Thomas is overcoming her
addiction.  Both Boyer and Dr. Douglas Cheatham, who performed Thomas’s
psychological evaluation, believe that with intervention and cooperation Thomas
can make progress.

However, Thomas does not appear to be highly
motivated to change.  About four months before trial, she tested positive for marihuana. 
The month before trial, Thomas tested positive for a painkiller prescribed to
her mother-in-law.  Although several other tests yielded negative results, one
was undeterminable because Thomas’s system was depleted.  Caseworker Jackie
Geer testified that Thomas refused several tests and delayed others.  Former
caseworker Joanie Brown testified that Thomas admittedly refused one such test
because she expected to test positive.

Neither has Thomas taken advantage of the
opportunities to overcome her addiction.  Boyer provided Thomas with a 12-step
manual that he does not believe Thomas ever used.  As of trial, Thomas had a
pending appointment with a drug treatment facility, but had neither begun nor
completed treatment.  Despite Thomas’s
abstinence claims, the trial court could have
formed a firm belief or conviction that Thomas’s
drug use jeopardized or exposed her
children to loss or injury and that, based on her past conduct endangering the children’s
well-being, similar conduct will recur if the children are returned to her.  See
Boyd, 727 S.W.2d at 533; see
also In the Interest of B.K.D., 131 S.W.3d 10, 17 (Tex. App.—Fort Worth 2003,
pet. denied); In re
D.L.N., 958
S.W.2d 934, 941 (Tex. App.—Waco 1997, pet. denied), disapproved
on other grounds by C.H., 89 S.W.3d at 26.

Thomas also has an extensive criminal history,
including charges for assault, shop lifting, theft, possession of
cocaine, and possession of marihuana.  Shortly before trial, she and her
husband were arrested for prescription fraud in which Thomas denies
involvement.  Thomas had recently served time in jail for unresolved traffic
tickets and was also on probation.  When parents “repeatedly commit criminal
acts that subject them to the possibility of incarceration, that can negatively
impact a child’s living environment and emotional well-being.”  In the Interest of S.M.L., 171 S.W.3d 472, 479 (Tex. App.—Houston [14th Dist.] 2005, no pet.).  “[D]rug-related criminal activity by parents and caregivers also
supports the conclusion that the children’s surroundings endangered their
physical or emotional well-being.”  D.C., 128 S.W.3d at 715-16.  The trial court could have formed a firm belief or
conviction that Thomas’s criminal
behavior, particularly that involving narcotics, jeopardized or exposed her children to loss or injury.  See Boyd, 727 S.W.2d at 533.

In summary, Thomas’s history of substance abuse
and criminal behavior, both of which continued after the removal of the
children from her care, creates conditions or surroundings that endanger her
children’s physical or emotional well-being.

An environment which routinely subjects a child to
the probability that she will be left alone because her parents are once again
jailed, whether because of the continued violation of probationary conditions
or because of a new offense growing out of a continued use of illegal drugs, or
because the parents are once again committed to a rehabilitation program,
endangers both the physical and emotional well-being of a child.  

 

In the Interest of S.D., 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998,
pet. denied).  The evidence is factually sufficient to support the trial
court’s finding that Thomas knowingly
placed or knowingly allowed her children to remain in conditions or
surroundings which endanger their physical or emotional well-being.  Tex. Fam. Code Ann. § 161.001(1)(D).  We need not address the factual sufficiency of
the evidence to support the other predicate grounds for termination.  See T.N.F.,
205 S.W.3d at 629.

Best Interest of the
Children

“[T]here is a strong presumption that the best interest of the
child will be served by preserving the parent-child relationship.”  T.N.F.,
205 S.W.3d at 633.  Several
factors assist with determining when termination is in a child’s best interest:
(1) desires of the child; (2) emotional and physical needs of the child now and
in the future; (3) emotional and physical danger to the child now and in the future;
(4) parental abilities of the individuals seeking custody; (5) programs
available to assist these individuals to promote the best interest of the
child; (6) plans for the child by these individuals or by the agency seeking
custody; (7) stability of the home or proposed placement; (8) acts/omissions of
the parent which may indicate that the existing parent-child relationship
is not proper; and (9) any excuse for the acts/omissions of the parent.  Holley
v. Adams, 544
S.W.2d 367, 371-72 (Tex. 1976).  This list is not exhaustive, but includes
the most important considerations.  Swate
v. Swate, 72
S.W.3d 763, 767 (Tex. App.—Waco 2002, pet. denied).  Although no single
consideration is controlling, the analysis of one factor may be adequate in a
particular factual situation to support a finding that termination is in the
best interest of the child.  Id.       

Desires of the children.

Due to the children’s young age, the record
contains no direct evidence of their desires. 

Emotional
and physical needs of the children now and in the future.

 

Thomas was able to keep A.R.R. healthy and clean, but
has been unable to maintain stable employment.  In the twelve months before
trial, she held three separate jobs each lasting no more than a few weeks. 
When employed, Thomas provided financial support to the children.

Thomas initially refused to perform services
because she was “undecided” about fighting for her children.  Dr. Cheatham
believes that Thomas has a “real and genuine concern” for her children, but Thomas’s
initial indifference causes him to question her attachment to the children.  Cheatham
stated that Thomas “cannot weigh the needs of the child[ren] and sacrifice at a
level that is necessary for their well-being” and “has difficulties
prioritizing the needs of her children over her own needs.”  Boyer testified
that Thomas focuses more on herself than “being sensitive to the needs of her
children.”    

During visits, Geer observed Thomas interact more
with the older children than with D.M.T.  Thomas sometimes became upset and
ended her visits with the children unless accompanied by a relative.  Supervisor
Paula Lee stated that Thomas seemed unable to care for the children unless
someone was available to help her.  Thomas’s behavior caused Geer to question
Thomas’s attachment to the children.  The record reflects that Thomas’s
interaction with the children did improve.

Emotional
and physical danger to the children now and in the future; acts/omissions of
the parent which may indicate that the existing parent-child relationship is
not proper.

 

Thomas admitted using and handling drugs during
her pregnancies and while in possession of A.R.R., using drugs even though she
knew prenatal drug use may harm an unborn child, and using drugs to cope with
stress.  The record contains evidence that Thomas continued using drugs after
her children were removed from her care.  Despite her claims of being drug
free, Thomas admitted that she has not been able to overcome her addiction in
the past.  Her criminal history includes drug related charges.  Thomas did not
complete drug treatment as required by the Department and discontinued
counseling.

 

Parental
abilities of the individuals seeking custody.

 

Thomas completed parenting classes and appears to
have some level of parenting skills.  Thomas
did not neglect A.R.R. and testified that she can take care of her children.  She
views the return of her children as a motivating factor for change.

Dr. Cheatham testified that Thomas’s “ability to
modulate, manage, and deal with her own emotional state is not functioning
where we need it to function for her to be a minimally adequate provider.”  With
intervention and cooperation, Cheatham believes that Thomas could provide a
“minimal level of adequate parenting,” but she does not seem to be as motivated
as other parents.

Boyer testified that Thomas complained about the service
plan and believed that exercising “good faith” was sufficient to keep her
children, regardless of her behavior or “where she was in terms of completing
her plan.”  Boyer did not observe Thomas accept any responsibility for the
risks to her children.  Boyer testified that Thomas has made progress and could
continue to do so.  As of his final session with Thomas, he could not say that Thomas
possessed the commitment to improve or that the improvement she had made was so
significant that she no longer posed a risk to her children.  He did not believe
that Thomas could provide for the children’s minimal needs unless she continued
receiving therapy.

Programs
available to assist these individuals
to promote the children’s best interest.

 

The Department required Thomas to undergo a psychological evaluation, drug assessment, drug
treatment, random drug screening, parenting classes, and counseling.  Dr.
Cheatham recommended that Thomas obtain her GED and vocational training,
improve her parenting skills, complete drug rehabilitation, and seek individual
psychotherapy.  Thomas completed a psychological evaluation and parenting
classes.  She began GED classes a few days before trial.

Plans
for the children by these individuals or by the agency seeking custody; stability
of the home or proposed placement.

            

Thomas loves and wants her children.  She believes
it is in the children’s best interest to know Thomas and C.T. and grow up with
their own family and race.  Thomas plans for the children to live with her aunt
until Thomas completes rehabilitation.  Thomas’s aunt failed her first home
study because of inadequate housing.  A second home study was approved, but Thomas’s
aunt subsequently lost her job.  Thomas’s aunt testified that she is seeking
employment and has a “good chance” of obtaining employment.  Caseworker Haywood
Thomas testified that the children would have been placed with Thomas’s aunt
had she not lost her job.

After she completes rehabilitation, Thomas plans
for the children to reside with her.  Both Thomas and her aunt testified that
Thomas has a good support group.  Jock was concerned about the stability of
Thomas’s living arrangements.  Boyer observed “conflict, arguing, fighting,
[and] disagreements” between Thomas and her husband.  Dr. Cheatham testified
that stress from Thomas’s interpersonal relationships causes her to “think and
do things that are not necessarily good for her or her family.”  However,
Thomas, and her husband, had begun to make some progress.

Geer testified that A.R.R. was quiet, shy, and withdrawn when removed from
Thomas’s home.  Lee testified that the children are thriving in their foster
home.  D.M.T. is walking, active, and mobile.  A.R.R. knows her colors, enjoys
reading, and is alert and talkative.  Geer testified that the children’s needs
are being met and they are healthy, well adjusted, and doing well.  Lee believes
that the children are “good candidates for adoption.”  Both Lee and Geer indicated
that the Department would attempt to locate an adoptive home for both children.

Any excuse for the acts/omissions of the parent.

            Thomas offered no excuse for her drug addiction or criminal
behavior.  She explained that her inability to maintain employment results from
one business being bought out, one employer conducting a lay off, and her
relocation to another city.  Thomas did not continue counseling after she
relocated, contending that Boyer did not answer his telephone or return her
calls.  Thomas testified that she missed her first appointment with a
rehabilitation facility because she received incorrect directions.  Thomas has
scheduled another appointment.

Conclusion   

Thomas’s substance abuse and criminal behavior
give rise to a lifestyle that demonstrates
her inability to provide a stable environment for the children and to provide
for their emotional and physical needs. 
Her “recent efforts to remain drug
free” do not “totally offset” her history of substance abuse.  In the Interest of A.D., 203 S.W.3d 407, 414 (Tex. App.—El Paso 2006, no
pet.).  A trial court may “measure
the future conduct of parents by their recent past conduct, but is not required
to believe that there has been a lasting change in a parent’s attitude since
his children were taken.” K.A.S., 131 S.W.3d at 229-230. 
Thomas has not demonstrated a willingness to place her children’s needs above
her own.

Accordingly, the trial court could reasonably form
a firm belief or conviction that termination of the parent-child relationship
is in the children’s best interest.  See
In the Interest of D.S., 176 S.W.3d 873, 879 (Tex. App.—Fort Worth 2005,
no pet.) (drug use, unstable
lifestyle, and failure to comply with service plan, complete drug treatment,
provide stable home, and maintain employment can support a finding that termination
is in the child’s best interest).  We overrule Thomas’s sole point of error and
affirm the trial court’s judgment.

 

 

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

Affirmed 

Opinion delivered and
filed August 1, 2007

[CV06]









[1]               C.T. is not involved in this
proceeding.





[2]               Thomas contends
that the Department presented no medical evidence that the children tested
positive for narcotics at birth.  However, caseworkers Laura White and Dawn
Jock testified that A.R.R. and D.M.T. both tested positive at birth.  Thomas
did not object to this testimony.  Moreover, the court was entitled to
disbelieve Thomas’s denials that the children tested positive for narcotics.  See
In the Interest of K.A.S., 131 S.W.3d 215, 229 (Tex. App.—Fort Worth
2004, pet. denied).