

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-12-00558-CV

**IN THE INTEREST OF M.K.C.-D.**, S.E.C.J, and E.M.C., Children

From the 218th Judicial District Court, Wilson County, Texas
Trial Court No. 11-09-0568-CVW
Honorable John J. Specia, Jr., Judge Presiding

Opinion by:   Karen Angelini, Justice

Sitting:      Catherine Stone, Chief Justice
              Karen Angelini, Justice
              Marialyn Barnard, Justice

Delivered and Filed:  January 30, 2013

AFFIRMED

Appellant Mother Ashley C. appeals the trial court's judgment terminating her parental rights to her children, M.K.C.-D., S.C.J., and E.M.C. Appellant Father Michael K. appeals the trial court's judgment terminating his parental rights to his son E.M.C. We affirm.

### BACKGROUND

The Department of Family and Protective Services ("the Department") had previously removed the children in this case from Ashley C.'s care. In June 2011, the children were returned to her. In September 2011, three months after the children had been returned, Ashley C.'s home was searched by law enforcement officials, and materials used to manufacture methamphetamine were found. More materials used to manufacture methamphetamine were found in a car parked near her home. That same day, Ashley C. tested positive for methamphetamine. Michael K., who

was passed out on the floor at the time of the search, was later arrested and convicted for manufacturing methamphetamine. The children were again removed from Ashley C.'s care. The Department then petitioned to terminate Ashley C.'s and Michael K.'s parental rights.

At trial, Deputy Richard Lee Nichols testified that on September 10, 2011, he executed a search warrant at Ashley C.'s home. According to Deputy Nichols, he found several items, which he knew from his law enforcement experience are used to manufacture methamphetamine. He testified that Ashley C., Michael K., and the children were present at the time the items were found. He testified that Ashley C. claimed that she was not aware of the materials found in her home. According to Deputy Nichols, the materials found are a hazard for children.

DeAnna Lindsey, the Department's caseworker, testified that Ashley C. has had a history with the Department off and on since 2001. M.K.C.-D. and S.E.C.J. had been in the Department's care from October 2008 to June 2011. They were returned to Ashley's C. care without any supervision in June 2011. They came back into the Department's care in September 2011 when a warrant was served at Ashley C.'s home. Lindsey testified that the police discovered what was believed to be a meth lab in the home and products for a meth lab. They then discovered a meth lab in Michael's car, which was near the home. Lindsey testified that the Department was then called. According to Lindsey, Ashley C. claimed the products found were cleaning materials and products for her own personal vehicle.

At the time of trial, M.K.C.-D., a girl, was seven years old. S.E.C.J., a girl, was five years old. E.M.C., a boy, was two years old. According to Lindsey, at the time of trial, the children had been in the Department's care for almost a year, and Michael K. had not maintained any contact with E.M.C. or with the Department. Lindsey testified that Michael K. had not demonstrated that he could provide a safe and stable home for E.M.C. She further testified that Michael K. was sentenced on February 24, 2012, to a seven-year period of confinement in prison in Cause No.

2009-CR-1086 (Bexar County). He was also sentenced on that same date in Cause No. 2010-CR-11228 (Bexar County) to a one-year sentence to run concurrently with the first one. On August 15, 2012, he was sentenced in Cause No. 1207084-CRW (Wilson County) for the offense of manufacture of a controlled substance, relating to the incident in this case. Lindsey testified that it was in E.M.C.'s best interest for Michael K.'s parental rights to be terminated because he could not provide a safe and stable environment for his son.

With regard to Ashley C., Lindsey testified that while Ashley C. completed all classes and counseling mandated by the family service plan, Lindsey still had concerns about returning the children to Ashley C.'s care because these services were largely the same services Ashley C. completed in the previous legal case. Lindsey testified that despite Ashley C.'s participation in the court-ordered services, she did not think that the risk factors that brought the children into the Department's care had been resolved. That is, in Lindsey's opinion, although Ashley C. completed her services, she had not benefitted from those services. Lindsey testified that Ashley C. had not made enough progress, and Lindsey was concerned that the same situation might occur yet again. In particular, Lindsey pointed to Ashley C.'s anger management issues and Ashley C.'s failure to communicate with the Department. Ashley C. had failed to give the Department her current address to allow for a home study or to provide proof of employment. Lindsey therefore testified that she did not believe Ashley C. could provide a safe and stable home for her children. Lindsey testified that it was in the children's best interest for Ashley C.'s parental rights to be terminated.

Lindsey also testified that Ashley C. had yet another Department case involving another one of her children. When that child was around one-year old, he went to live with Ashley C.'s aunt because Ashley C. was homeless. He has remained with Ashley C.'s aunt since. Lindsey testified that Michael K. was also previously involved with the Department in 2009, regarding

the child of a girlfriend. According to Lindsey, the Department determined that there was a risk of physical abuse, physical neglect, and neglectful supervision.

Michael K., E.M.C.'s father, testified that his mother had brought him from Fort Worth to Ashley C.'s home a few days before the police searched the home. When the police entered the home, Michael K. was passed out on the floor and had to be awakened by the officers. Michael K. claimed that he suffered from seizures and apparently had one on that day. Michael K. testified that he knew Ashley C. had a history with the Department, but he did not believe there was a case with regard to E.M.C. Michael K. denied that he manufactured methamphetamine while he was in Ashley C.'s home. He claimed the ingredients found in the home were not used to manufacture methamphetamine. Michael K. testified that he pled no contest to the charge of manufacturing methamphetamine because his seven-year sentence for another offense "would eat up" the six-year sentence for manufacturing methamphetamine. Michael K. testified that his sentence would be completed in 2018.

Jennifer Harris testified that she was Ashley C.'s counselor and also her domestic violence group facilitator. She testified that Ashley C. has anger-management issues. The service plan goals concerned her anger management issues, complying with the Department's requests, and "negative drug tests." Harris testified that Ashley C.'s steps toward compliance and negative drug tests were successful. However, according to Harris, while Ashley C. made some progress with her anger issues, the counseling sessions were not completely successful.

Ashley C. testified that when her children were removed in this case, she became proactive and enrolled herself in a drug rehabilitation program. She claimed she did not have anger-management issues with the Department, and she testified that she is employed. According to Ashley C., the police "took things out of my medicine cabinet like alcohol and peroxide." She testified that the items taken were cleaning supplies and cans she used to recharge her car's air

conditioning unit. According to Ashley C., the meth lab was found in an abandoned car near her property, but it was not her car and was not on her property. And, although she claimed she had not used methamphetamine at the time the children were removed, she admitted to testing positive for it on the day the children were removed. She also admitted to testing positive in November 2011, but claimed she had been able to "disprove that one with a hair follicle" test. She admitted that her psychiatrist said she has narcissistic tendencies and a bit of histrionic behavior. She admitted that she had not given the Department her current address. According to Ashley C., she had been living with a friend, but was now living at her house. Ashley C. admitted to making "stupid decisions in love."

After hearing all the evidence, the trial court terminated Michael K.'s parental rights pursuant to section 161.001(1)(D), finding that Michael K. had knowingly placed or knowingly allowed his child to remain in conditions or surroundings that endangered his child's physical or emotional well-being. The trial court also terminated Michael K.'s parental rights pursuant to section 161.001(1)(E), finding that Michael K. had engaged in conduct or knowingly placed his child with persons who engaged in conduct that endangered his child's physical or emotional well-being. And, finally, the trial court terminated Michael K.'s parental rights pursuant to section 161.001(1)(Q), finding that Michael K. had knowingly engaged in criminal conduct that has resulted in his (1) conviction for an offense; and (2) confinement or imprisonment, and inability to care for the child for not less than two years from the date of filing the petition. Additionally, the trial court found it was in E.M.C.'s best interest for Michael K.'s parental rights to be terminated.

With respect to Ashley C., the trial court terminated her parental rights pursuant to section 161.001(1)(D), finding that she had knowingly placed or knowingly allowed her children to remain in conditions or surroundings that endangered her children's physical or emotional

well-being. The trial court also terminated Ashley C.'s parental rights pursuant to section 161.001(1)(E), finding that she had engaged in conduct or knowingly placed her children with persons who engaged in conduct that endangered her children's physical or emotional well-being. Additionally, the trial court found that it was in the best interest of M.K.C.-D., S.E.C.J., and E.M.C. for Ashley C.'s parental rights to be terminated.

## TERMINATION OF PARENTAL RIGHTS

Parental rights may be terminated only upon proof of clear and convincing evidence that the parent has committed an act prohibited by section 161.001(1) of the Texas Family Code, and that termination is in the best interest of the child.[1] *See* TEX. FAM. CODE ANN. § 161.001 (West Supp. 2012). If, as here, the trial court terminated the parent-child relationship on multiple grounds under section 161.001(1), we may affirm on any one ground because, in addition to finding that termination is in the child's best interest, only one predicate violation under section 161.001(1) is necessary to support a termination decree. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

## SUFFICIENCY OF THE EVIDENCE

Both Michael K. and Ashley C. argue that the evidence is legally and factually insufficient to support termination of their parental rights under section 161.001(1). Specifically, Ashley C. and Michael K. argue that the evidence is legally and factually insufficient to support termination under subsections (D) and (E). *See* TEX. FAM. CODE ANN. § 161.001(1)(D), (E).

When the legal sufficiency of the evidence is challenged, we look at all the evidence in the light most favorable to the trial court's finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). "To give appropriate deference to the factfinder's conclusions and the role

---

[1] We note that neither Ashley C. nor Michael K. has challenged the trial court's best interest finding on appeal.

of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id.* "A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* "If, after conducting its legal sufficiency review of the record evidence, a court determines that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then that court must conclude that the evidence is legally insufficient." *Id.* at 344–45.

When a parent challenges the factual sufficiency of the evidence on appeal, we look at all the evidence, including disputed or conflicting evidence. *Id.* at 345. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). In reviewing termination findings for factual sufficiency, we give due deference to the factfinder's findings and do not supplant its judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).

Both Ashley C. and Michael K. argue that the evidence is legally and factually insufficient to support termination on section 161.001(1)(D) and (E) grounds because there is no evidence that they "endangered" the children. Subsection D allows for termination of parental rights if the parent knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endangered the child's physical or emotional well-being. *See* Tex. Fam. Code Ann. § 161.001(1)(D) (West Supp. 2012). Subsection E allows for termination of parental rights if the parent engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the child's physical or emotional well-being. *See id.* § 161.001(1)(E).

Although similar, subsections D and E differ in one respect: the source of the physical or emotional endangerment to the child. *In re D.C.*, 128 S.W.3d 707, 715 (Tex. App.—Fort Worth 2004, no pet.). "Under subsection (D), the environment, including the environment produced by the parent's conduct, is the source of endangerment to the child." *Id.* "Under subsection (E), the danger to the child is a result of the parent's conduct, including the parent's actions or omissions, or failures to act." *Id.*

The Texas Supreme Court has held that the word "endanger" in the context of section 161.001 of the Family Code means "to expose to loss or injury," or "to jeopardize." *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (citing *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). With regard to subsection (D), "[a]s a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child." *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied); *see In re S.D.*, 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. denied). Conduct of a parent in the home can create an environment that endangers the physical and emotional well-being of a child. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). For example, abusive or violent conduct by a parent or other resident of a child's home may produce an environment that endangers the physical or emotional well-being of a child. *Id.* "Illegal drug use and drug-related criminal activity by parents and caregivers also support the conclusion that the children's surroundings endangered their physical or emotional well-being." *In re D.C.*, 128 S.W.3d at 716; *see also In re J.T.G.*, 121 S.W.3d at 125. Finally, a fact-finder may infer from past conduct endangering the well-being of a child that similar conduct will recur if the child is returned to the parent. *In re D.J.H.*, 381 S.W.3d 606, 613 (Tex. App.—San Antonio 2012, no pet.).

Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *In re J.T.G.*, 121 S.W.3d at 125. Termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *Id.* However, it is not necessary that the parent's conduct be directed at the child or that the child actually suffer injury. *Id.* Drug addiction and its effect on a parent's life and ability to parent may establish an endangering course of conduct. *Id.*

Here, there was evidence that both Michael K. and Ashley C. had prior histories with the Department. Indeed, the Department became involved in the current case only three months after the children had been returned to Ashley C.'s care. There was also evidence that during a search of Ashley C.'s home, law enforcement officials discovered materials used for the manufacture of methamphetamine. At the time the materials were discovered in the home, the children were present. There was testimony such circumstances were a hazard for the children. There was also testimony that materials used to manufacture methamphetamine were found in Michael K.'s car, which was parked near the home. On the day of the search, Ashley C. tested positive for methamphetamine. Michael K. later pled no contest to the felony offense of manufacture of a controlled substance and was sentenced to six years imprisonment.

Michael K. and Ashley C. argue that there was no evidence methamphetamine was actually being manufactured on the property as the items seized were used for cleaning and that the "alleged meth lab" was in an abandoned car outside the property. Ashley C. also emphasizes that she was never indicted for any offense related to the incident. However, the trial court as finder of fact could have reasonably believed Deputy Nichols's and Deanna Lindsey's testimony and disbelieved Ashley C.'s and Michael K.'s testimony. Thus, based on the conflicting

evidence, the trial court could have reasonably inferred that methamphetamines were being used and manufactured in Ashley C.'s home when the children were present.

We hold that the evidence is legally and factually sufficient to support the trial court's termination on subsection (D) grounds.[2] Based on the evidence, the trial court could have reasonably concluded that (1) Ashley C. was living with the children in a home containing materials to produce methamphetamine and that she had knowledge those materials were present; (2) Ashley C. allowed the children to be around Michael K., who was convicted of actually producing the methamphetamine in this case; and (3) Ashley C. tested positive for methamphetamine on the day of the search. With regard to Michael K., the trial court could have reasonably concluded that Michael K. knowingly placed or knowingly allowed E.M.C. to remain in conditions that endangered his physical or emotional well-being when Michael K. manufactured methamphetamines in Ashley C.'s home, where the children resided.

Michael K. also complains that the trial court erred in granting the Department's request for a trial amendment to include the subsection (Q) ground for termination. Michael K., however, did not object to the Department's request for a trial amendment and thus waived any error. *See City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 73 (Tex. 2000). Further, as we have held that there was sufficient evidence to support termination under subsection (D), any error with respect to the trial court granting a trial amendment would be harmless. *See In re A.V.*, 113 S.W.3d at 362.

**CONCLUSION**

We therefore affirm the trial court's Order of Termination.

Karen Angelini, Justice

---

[2] Having so held, we need not determine whether there was sufficient evidence to terminate based on subsection (E) grounds. *See In re A.V.*, 113 S.W.3d at 362.