# Court of Appeals
## Tenth Appellate District of Texas

---

10-24-00301-CV

---

In the Interest of
A.D.H., M.M.H., and A.I.M.W., Children

---

On appeal from the
County Court at Law of Hill County, Texas
Judge Matt S. Crain, presiding
Trial Court Cause No. CV135-23CCL

---

JUSTICE HARRIS delivered the opinion of the Court.

**MEMORANDUM OPINION**

Following a jury trial, Mother's parental rights to A.D.H, M.M.H, and A.I.M.W. were terminated pursuant to Texas Family Code Sections 161.001(b)(1)(D), (b)(1)(E), and (b)(1)(O).[1]  *See* TEX. FAM. CODE ANN. §§ 161.001(b)(1)(D), (b)(1)(E), (b)(1)(O).  The jury also found termination of Mother's parental rights to be in the best interest of all three children.  *See id.* at § 161.001(b)(2).  In nine issues on appeal, Mother challenges the legal and

---

[1] The father of A.D.H. and M.M.H. is deceased and was not a party to the underlying proceedings.  The parent-child relationship between A.I.M.W. and her father, N.W., was terminated pursuant to N.W.'s affidavit of voluntary relinquishment of parental rights signed prior to trial.  N.W. does not appeal.

factual sufficiency of the evidence supporting each of the predicate grounds and the best-interest finding, and she argues that the trial court abused its discretion by appointing the Department of Family and Protective Services ("the Department") as the managing conservator of the children.[2]  We affirm.

## Background

In June of 2021, the Department removed five-year-old A.D.H. and three-year-old M.M.H. from Mother's care due to allegations of Mother's marijuana use, concerns with the children's hygiene, and Mother's admission that she and the children were living with N.W.—a lifetime registered sex offender with a moderate risk for reoffending.  As part of her service plan during the 2021 case, Mother participated in various services, such as a protective parenting course.  She also informed the Department that she ended her relationship with N.W.  While the case was pending, Mother gave birth to N.W.'s daughter, A.I.M.W.  The case was eventually dismissed in February of 2023, and Mother retained custody of the children.

Approximately one month later, the Department initiated the instant case.  At around 11:00 a.m. on March 11, 2023, seven-year-old A.D.H. called 9-1-1 to report that he and five-year-old M.M.H. were left home alone for an

---

[2] Mother preserved each of these issues for appellate review in a timely-filed motion for new trial, which the trial court denied.  *See In re D.T.*, 625 S.W.3d 65, 75 n. 8 (Tex. 2021) (citing *Aero Energy, Inc. v. Circle C Drilling Co.*, 699 S.W.2d 821, 822 (1985)).

extended period of time. Further investigation of this incident revealed that Mother left A.D.H. and M.M.H. with two teenage babysitters on the evening of March 10, 2023 while she took A.I.M.W. to the hospital. The teenagers left the residence at some point during the night. Though hospital records indicated that A.I.M.W. was released from the hospital at approximately 1:40 a.m., Mother did not return home. When questioned as to her whereabouts after A.I.M.W. was discharged, Mother initially claimed that she was at her mother's home in Clifton; however, she eventually admitted that she took A.I.M.W. to N.W.'s residence where the three of them spent the night together. The Department removed all three children from Mother's care and filed its petition seeking to terminate Mother's parental rights.

## Predicate Grounds

In her third and fourth issues on appeal, Mother contends that the evidence was legally and factually insufficient for the jury to have found that she "engaged in conduct or knowingly placed the child[ren] with persons who engaged in conduct which endangers the physical or emotional well-being of the child[ren]." *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E). We disagree.

STANDARDS OF REVIEW

The standards of review for legal and factual sufficiency in cases involving the termination of parental rights are well established and will not be repeated here. *See In re J.O.A.*, 283 S.W.3d 336, 344-45 (Tex. 2009); *In re*

*J.F.C.*, 96 S.W.3d 256, 264-68 (Tex. 2002); *see also In re J.F.-G.*, 612 S.W.3d 373, 381-82 (Tex. App.—Waco 2020), *aff'd*, 627 S.W.3d 304 (Tex. 2021). We give due deference to the factfinder's findings and must not substitute our judgment for that of the factfinder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). The factfinder is the sole judge of the credibility of the witnesses and the weight to give their testimony. *Jordan v. Dossey*, 325 S.W.3d 700, 713 (Tex. App.—Houston [1st Dist.] 2010, pet. denied).

AUTHORITY

If multiple predicate violations are found by the factfinder, we will affirm based on any one finding because only one finding is necessary for termination of parental rights when there is also a finding that termination is in the child's best interest. *See In re N.G.*, 577 S.W.3d 230, 232-33 (Tex. 2019); *In re J.S.S.*, 594 S.W.3d 493, 503 (Tex. App.—Waco 2019, pet. denied). But if one of the predicate grounds is based on endangerment under Subsection D or E, we are required to fully address that ground, if presented on appeal, based on future collateral consequences of such a finding. *See N.G.*, 577 S.W.3d at 234-37.

To endanger means "to expose to loss or injury" or "to jeopardize." *See In re J.F.-G*, 627 S.W.3d at 312 (quoting *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). Under Subsection E, the relevant inquiry is whether evidence exists that the endangerment of the children was the direct result of the parent's conduct, including the parent's acts, omissions, or failures

to act. *See In re E.M.*, 494 S.W.3d 209, 222 (Tex. App.—Waco 2015, pet. denied). The endangering conduct need not be directed at the children, nor must the children actually suffer injury. *Boyd*, 727 S.W.2d at 533. The specific danger to the children's well-being may be inferred from parental misconduct alone. *Id.* In an analysis under Subsection E, we may consider conduct before and after the children's removal. *See In re J.O.A.*, 283 S.W.3d at 345.

ANALYSIS

A parent's conduct that subjects her children to a life of uncertainty and instability endangers the physical and emotional well-being of the children. *Jordan*, 325 S.W.3d at 723. Such conduct may include failure to maintain stable housing and employment. *In re A.D.*, No. 10-21-00330-CV, 2022 Tex. App. LEXIS 2796, 2022 WL 1256949, at *12 (Tex. App.—Waco Apr. 27, 2022, pet. denied) (mem. op.). As for employment, the record reflects that Mother had approximately eight different jobs during the 2021 case and at least five different jobs during the pendency of this case. Though Mother testified at trial that she had recently moved into a suitable apartment, the record also reflects that Mother lived in at least five different locations from the time of the children's removal until trial.

Additionally, a parent endangers her child by accepting the endangering conduct of other people. *See In re L.W.*, No. 01-18-01025-CV, 2019 Tex. App. LEXIS 2825, 2019 WL 1523124, at *42 (Tex. App.—Houston [1st Dist.] Apr. 9,

2019, pet. denied) (mem. op.). The record reflects that Mother was aware of a history of violence between the two teenagers with whom she left A.D.H. and M.M.H. on March 10, 2023. While Mother testified that she was unaware that the teenagers left A.D.H. and M.M.H. unsupervised when she decided to spend the night with N.W., she admitted that she had never left the children alone with these babysitters for more than one hour and acknowledged that she did not consider checking on A.D.H. and M.M.H.'s welfare.

Further, a parent's decision to permit her children to have contact with a person convicted of a sexual offense supports a finding of endangering conduct. *See In re M.R.R.*, No. 10-15-00303-CV, 2016 Tex. App. LEXIS 434, 2016 WL 192583, at *11 (Tex. App.—Waco Jan. 14, 2016, no pet.) (mem. op.); *In re K.K.D.B.*, No. 14-17-00302-CV, 2017 Tex. App. LEXIS 9425, 2017 WL 4440546, at *22-23 (Tex. App.—Houston [14th Dist.] Oct. 5, 2017, pet. denied) (mem. op.). One of the Department's primary reasons for removal, both in the 2021 case and the instant case, was Mother's ongoing romantic relationship with N.W.

At trial, N.W. testified about his criminal history. He discussed his juvenile history that involved his sexual assault of a nine-year-old boy, and explained that he completed a treatment program and correctional bootcamp as part of this juvenile sexual assault case. *See* TEX. PENAL CODE ANN. § 22.011. Despite completion of these programs as a juvenile, after N.W. became

an adult, he was accused of two counts of aggravated sexual assault of a child. *See id.* at §§ 22.021. These offenses were committed against a thirteen-year-old female victim. In 2011, N.W. entered into a plea agreement with the State on these charges. He pled guilty to one count of aggravated sexual assault of a child and to one count of lesser-included injury to a child. *See id.* at §§ 22.021, 22.04. He was sentenced to serve ten years in prison on the aggravated sexual assault of a child conviction and to ten years of probation on the injury to a child conviction. These sentences were to run consecutively, with N.W.'s probationary period beginning once he was released from prison. According to N.W., he served the entirety of his ten-year prison sentence on the aggravated sexual assault of a child conviction. He then met Mother in February of 2021 while he was on probation for the injury to a child conviction. N.W. stated that he apprised Mother of his sexual assault history and its associated restrictions toward the beginning of their relationship, including that he could not have contact with her children.

Even with this information, Mother moved A.D.H. and M.M.H. into N.W.'s residence in 2021. Both children referred to N.W. as "Daddy" and N.W. was permitted to physically discipline the children. Though Mother indicated at trial that she was not aware of the nature of N.W.'s juvenile history, the record reflects that she was at least aware of his adult convictions. During the 2021 case, Mother expressed to the Department that she did not have any

concerns with N.W.'s criminal history, "that she didn't believe that the charges were real and that the victim of [N.W.] was lying." On September 30, 2021, N.W.'s probation was revoked based on several violations, including failure to refrain from contact with minors and use of cocaine and marijuana. He was sentenced to serve five years in prison, though he was later released on intensive supervision parole.

Though N.W. disputed Mother's testimony, Mother admitted that she and A.I.M.W. spent the night with N.W. at his residence after leaving the hospital on March 11, 2023. She justified the overnight stay by explaining, "It was more for [A.I.M.W.]. You know, she's never spent much time with him -- her dad." A representative of the Department also testified that Mother previously admitted to at least three occasions since N.W. had been released from custody that she and A.I.M.W. had stayed overnight with him.

After the children's removal in this case, the Department created service plans for N.W. and for Mother. At some point, N.W. was reincarcerated for violating conditions of his parole. Though he was eventually released again on parole, N.W. failed to participate in several of his required services. Mother, however, had demonstrated progress with her services and represented that she had ended her relationship with N.W. In hopes of family reunification with Mother, the Department requested an extension in January of 2024 to give

Mother additional time to complete her services. The trial court granted the extension request.

However, the Department later learned that between the months of February and April of 2024, while N.W. was still in custody for his parole violations, Mother participated in over five hundred jail phone calls and communications with N.W. Through those jail communications, the Department learned that Mother and N.W. had been secretly meeting at a motel prior to his reincarceration and that Mother believed she might be pregnant with his child. There was also testimony that Mother and N.W. were making plans to flee the state together with all of the children so that they could be a family. Additionally, during a home visit to Mother's residence, the Department located a man's shirt hanging in a closet. Mother claimed that the shirt was in the closet when she moved into the home; however, in one of the jail phone calls after the home visit, Mother and N.W. discussed that Mother needed to hide N.W.'s belongings in a trash bag in her car so that the Department would not find them.

At trial, Mother testified that N.W. previously threatened to harm her if she left him, as well as threatened to slash her tires, choke her, and kill her. Meanwhile, N.W. testified that when he discussed the possibility of "stepping out of the picture" after the removal of the children, Mother engaged in self-harm and told him if "I can't be with you, I don't want to be with nobody."

Mother also testified that she permanently ended her relationship with N.W. in April of 2024. However, Mother admitted that she lied to multiple people in the past about her ongoing relationship with N.W. because she thought she could get away with it.

We conclude that the evidence was legally and factually sufficient to support termination of Mother's parental rights to all three children under Subsection E. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E). We overrule Mother's third and fourth issues. Because we find the evidence is legally and factually sufficient under Subsection E, we do not need to address Mother's sufficiency issues as to Subsections D and O presented in her first, second, fifth, and sixth issues.

## Best Interest

In her seventh and eighth issues on appeal, Mother contends that the evidence is legally and factually insufficient to support the trial court's best-interest finding as to all three children. We disagree.

AUTHORITY

In determining the best interest of a child, a number of factors have been consistently considered which were set out in the Texas Supreme Court's opinion, *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). This list is not exhaustive, but simply identifies factors that have been or could be pertinent in the best-interest determination. *Id.* There is no requirement that all of

these factors must be proved as a condition precedent to parental termination, and the absence of evidence about some factors does not preclude a factfinder from reasonably forming a strong conviction that termination is in the children's best interest. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). The *Holley* factors focus on the best interest of the children, not the best interest of the parent. *Dupree v. Tex. Dep't of Protective & Regul. Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ). And while no one factor is controlling, the analysis of a single factor may be adequate in a particular situation to support a finding that termination is in the children's best interest. *In re J.M.T.*, 519 S.W.3d 258, 268 (Tex. App.—Houston [1st Dist.] 2017, pet. denied).

ANALYSIS

At the time of trial, A.D.H. was eight years old, M.M.H. was six years old, and A.I.M.W. was two years old. A.I.M.W. was too young to articulate her desires regarding placement; however, both A.D.H. and M.M.H. expressed a desire to return home to Mother. Although a child's wishes are an important consideration in determining the child's best interest, it is but one factor that we consider in our analysis and "it cannot override or outweigh evidence of danger to the child." *In re F.M.E.A.F.*, 572 S.W.3d 716, 732 (Tex. App.—Houston [14th Dist.] 2019, pet. denied). A parent's past endangering conduct may create an inference that the parent's past conduct may recur and further

jeopardize the children's present or future physical or emotional well-being. *See In re C.H.*, 89 S.W.3d at 27-28; *In re J.S.S.*, 594 S.W.3d at 505. Mother's decision to knowingly and repeatedly expose her children to a registered sex offender is endangering conduct that demonstrates an inability or unwillingness to meet the emotional and physical needs of the children. Mother acknowledged at trial that her decision to secretly continue her relationship with N.W. could understandably be perceived as putting N.W.'s needs and her own needs above those of her children. Moreover, the jury was entitled to disbelieve Mother's testimony that she was no longer dating N.W. at the time of trial, particularly considering her admission that she consistently lied about ending her relationship with him.

A parent's inability to provide a stable home and maintain employment can support a best-interest finding. *In re D.C.*, 128 S.W.3d 707, 717 (Tex. App.—Fort Worth 2004, no pet.). Though Mother obtained appropriate housing and a job at the time of trial, she historically demonstrated an inability to maintain appropriate housing and employment throughout both of her termination cases.

Additionally, a representative of the Department testified that Mother's visits with the children would sometimes be "chaotic," meaning that it was difficult for her to manage parenting all three children simultaneously. The record also indicates that Mother struggled to adequately and consistently

provide for the children's behavioral and developmental needs. At the onset of the 2021 case, both A.D.H. and M.M.H. struggled with speech delays and behavioral issues that, according to the record, notably improved during their time in foster care. However, the children regressed when they were returned to Mother's custody. In the current case, A.I.M.W.'s caregiver testified that A.I.M.W. came into foster care exhibiting noticeable impulse-control issues, which the caregiver observed would worsen after visits with Mother. The Department also expressed concern over Mother's ability to dependably administer necessary medication to the children after discovering that Mother had not been consistently providing certain medication to M.M.H. A continuing a pattern of inconsistently providing necessary medication would be particularly detrimental to the current and future well-being of A.D.H., who required temporary inpatient psychiatric care due to exhibiting "fits of rage" while in foster care that must be managed with the proper administration of certain medication.

Considering the record before us under the appropriate standards, we find that the evidence was legally and factually sufficient to support the best-interest finding as to all three children. Accordingly, we overrule Mother's seventh and eighth issues on appeal.

**Conservatorship**

In her ninth issue on appeal, Mother argues that the trial court abused its discretion by appointing the Department as managing conservator of the children. We disagree.

STANDARD OF REVIEW

Conservatorship determinations are governed by a preponderance-of-the-evidence standard and are subject to review for an abuse of discretion. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). We will reverse a trial court's conservatorship appointment only if we determine it was arbitrary or unreasonable. *Id.*

ANALYSIS

The trial court's termination order appoints the Department as managing conservator of all three children and makes findings pursuant to Section 153.131(a) that "the appointment of the Respondent [Mother] as permanent managing conservator of the children is not in the children's best interest because the appointment would significantly impair the children's physical health or emotional development." *See* TEX. FAM. CODE ANN. § 153.131(a). In cases where a trial court's termination of the parent-child relationship is reversed, a parent is required to independently challenge a trial court's conservatorship finding under Section 153.131(a) to obtain reversal of the conservatorship appointment. *See In re J.A.J.*, 243 S.W.3d at 616-17.

However, as Mother acknowledges, if a reviewing court upholds the termination of parental rights on appeal, the appointment of the Department as managing conservator may be considered a consequence of the termination pursuant to Section 161.207. *See* TEX. FAM. CODE ANN. § 161.207; *In re J.H.*, No. 10-24-00057-CV, 2024 Tex. App. LEXIS 5670, 2024 WL 3715840, at \*13-14 (Tex. App.—Waco Aug. 8, 2024, pet. denied) (mem. op.). Section 161.207, entitled "Appointment of Managing Conservator on Termination," provides that "[i]f the court terminates the parent-child relationship with respect to both parents or to the only living parent, the court shall appoint a suitable, competent adult, the Department of Family and Protective Services, or a licensed child-placing agency as managing conservator of the child." TEX. FAM. CODE ANN. § 161.207(a).

Because we have affirmed the judgments of termination of Mother's parental rights, based on our review of the evidence, we conclude that the trial court did not abuse its discretion when it appointed the Department as managing conservator of the children. We overrule Mother's ninth issue on appeal.

## Conclusion

Having found no reversible error, we affirm the judgment of the trial court.

_____

LEE HARRIS
Justice

OPINION DELIVERED and FILED:  March 13, 2025

Before Chief Justice Johnson,
       Justice Smith, and
       Justice Harris
Affirmed
[CV06]

