# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00746-CV

### C. W., Appellant

### v.

### Texas Department of Family and Protective Services, Appellee

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
### NO. D-1-FM-13-002393, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

C.W. challenges the trial court's termination of her parental rights to three children. Appellant contends that the evidence is legally insufficient to support the conclusion that she endangered her children's physical and emotional well-being and is factually insufficient to support the conclusion that termination of her rights is in her children's best interest. We will affirm the judgment.

## BACKGROUND

Appellant had three children who were born in January 2010, July 2011, and December 2012. Each child has a different alleged biological father whose parental rights were terminated in the trial below. None of the men filed a notice of appeal.

The older two children came to the Department's attention in February 2012 through a report of domestic violence between the father of the second child and appellant. There was

evidence that appellant engaged in another altercation with the same man in the presence of the children immediately after the Department's investigator left. Several other altercations involving appellant occurred over the next few months while the Department unsuccessfully directed the parents to avail themselves of various services. Despite being under scrutiny by the Department, appellant admittedly used illegal drugs (marijuana and cocaine) and associated with persons who did the same. The second child's paternal grandmother, P.B., said she took possession of the third child three weeks after birth. Within two months after her third child was born, appellant fought with a woman who temporarily dislocated appellant's eye. The Department filed a termination petition in April 2013, and P.B. took possession of the two older children shortly thereafter.

Appellant then engaged in the services required by the Department's plan for her including a psychological evaluation and classes in anger management, protective parenting, and domestic violence awareness. She was diagnosed with paranoid-type schizophrenia, post-traumatic stress disorder from childhood sexual abuse, and low intelligence and common sense among other challenges in addition to her drug use. Though witnesses testified that appellant's behavior, awareness, and parenting improved after her drug rehabilitation and parenting-related education, her conservatorship worker questioned how much of the lessons appellant internalized. In 2014, appellant engaged in a relationship with a man who had just left prison and had his parental rights terminated, another man who yelled at her from outside her apartment so loudly that a security guard struggled to get him to calm down, another man who left a marijuana grinder in her apartment, and another man who hid marijuana in her dresser drawer when a Department worker arrived to inspect her home in preparation for the children's visit. Appellant said she ended these relationships because she realized that the relationships might jeopardize her parental rights.

2

By the time of trial, the children had been in P.B.'s possession for nearly two years. The trial court determined that appellant had endangered the children in the past and that termination was in the children's best interest.

## STANDARD OF REVIEW

Termination proceedings are strictly scrutinized on appeal. *See Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). The natural right of a parent to the care, custody, and control of their children is one of constitutional magnitude. *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014); *see also Troxel v. Granville*, 530 U.S. 57, 65 (2000).

Appellant challenges both the legal and factual sufficiency of the evidence. We review the legal sufficiency of the evidence by considering all of the evidence in the light most favorable to the factfinder's determination, and will uphold a finding if a reasonable factfinder could have formed a firm conviction that its finding was true. *In re J.F.C.*, 96 S.W.3d 256, 266-67 (Tex. 2002). To defer appropriately to the factfinder's conclusions, we must assume that the factfinder resolved disputed facts in favor of its finding if it could reasonably have done so. *See id.* When reviewing the factual sufficiency of the evidence, we consider the entire record including evidence contrary to the factfinder's determination. "If, in light of the entire record, we determine that the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction then the evidence is factually insufficient." *Id.* at 266; *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002).

3

**DISCUSSION**

The trial court concluded that appellant had knowingly placed or allowed her children to remain in conditions or surroundings that endangered their physical or emotional well-being. *See* Tex. Fam. Code § 161.001(1)(D). The court also determined that she engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being. *Id.* at § 161.001(1)(E). The trial court further concluded that termination of appellant's parental rights is in the children's best interest. *See* Tex. Fam. Code § 161.001(2). Appellant challenges all three conclusions.

**Grounds for Termination**

The Department sought termination of appellant's parental rights under subsections (D) and (E) of section 161.001(1) of the Family Code. Only one statutory ground is necessary to support a termination of parental rights. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). We must uphold the court's conclusion if any of the statutory grounds alleged supports it. *Spurck v. Texas Dep't of Family & Prot. Servs.*, 396 S.W.3d 205, 221 (Tex. App.—Austin 2013, no pet.).

Under section 161.001(1), "endanger" means more than a threat of metaphysical injury or potential ill effects of a less-than-ideal family environment. *In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012). Endangering conduct need not be directed at the child. *Id.* The endangering conduct may include the parent's actions before the child's birth, while the parent had custody of older children, including evidence of drug usage. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). Endangerment can be less than actual injury and includes merely exposing a child to loss or injury

4

or jeopardizing a child's emotional or physical well-being. *Texas Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). Abusive or violent conduct by a parent or other resident of a child's home may produce an environment that endangers the physical or emotional well-being of a child. *In re D.C.*, 128 S.W.3d 707, 715 (Tex. App.—Fort Worth 2004, no pet.). Additionally, domestic violence, want of self-control, and propensity for violence may be considered as evidence of endangerment. *In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.). Being exposed to violence can endanger the children even if they are not the targets of the violence. *See In re D.C.*, 128 S.W.3d at 715; *In re J.I.T.P.*, 99 S.W.3d at 845. The same is true of illegal drug use. *In re J.O.A.*, 283 S.W.3d at 345; *see also In re N.K.*, 399 S.W.3d 322, 330 (Tex. App.—Amarillo 2013, no pet.) (illegal drug use or unlawful conduct, especially in the home, can create an environment that endangers the child's physical and emotional well-being).

There was ample evidence that appellant had several physical altercations with different people, including the children's fathers. Some of those altercations occurred in the children's presence. In February 2012, a report of domestic violence between appellant and the father of her second child drew a visit from a Department worker, who testified that the children were reportedly in the nearby street when this occurred. The Department witness testified that immediately after her colleague left, appellant and the father engaged in another incident that resulted in a call to police. There was evidence that appellant slapped the father of the middle child while he was holding their child, leaving a scratch mark on both the father and the child. She later had a confrontation with him in which she said he choked and punched her while her children were in her apartment. Another time, she had an argument with that father's family while she was walking with her children and the father's sister—P.B.'s daughter—started swinging at her. Arrests for

5

domestic violence by appellant left her incarcerated for short periods of time after the Department became involved with her children. Although appellant disputed some of the accounts of the source and nature of the physical aggression, the key fact is that there is clear and convincing evidence that appellant was repeatedly involved with different people in anger-fueled confrontations in which physical violence occurred, sometimes near the children.

There was also undisputed evidence that appellant used marijuana and cocaine and allowed persons who used illegal drugs to be around the children while her fitness as a parent was under review. While appellant testified that she had been sober for several months in 2014 and had cut ties with persons who were under the influence of drugs around her children, that did not negate her actions and inaction that had exposed the children to danger.

Legally sufficient evidence supported the trial court's conclusion that appellant endangered the children's physical and emotional well-being under both grounds.

**Best interest of the children**

There is a strong presumption that a child's best interest is served by keeping custody in the natural parent. *In re D.T.*, 34 S.W.3d 625, 641 (Tex. App.—Fort Worth 2000, pet. denied). There are a number of factors that may be considered: (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent which may indicate that the existing

parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). This list of relevant considerations is not exhaustive, and a factfinder is not required to consider all of the listed factors. *See id.*; *see also Leal v. Texas Dept. of Protective & Regulatory Servs.*, 25 S.W.3d 315, 322 (Tex. App.—Austin 2000, no pet.).

The conservatorship worker testified that the oldest child, aged five, said that he wanted to live with appellant. The younger children had not expressed a desire. The testimony did not focus on the children's emotional and physical needs now or in the future, though witnesses touted the relative stability of the children's lives with P.B. in the past and the increased likelihood of stability continuing if appellant's rights were terminated and P.B. adopted the children. The eldest child was unable to talk when he first came into P.B.'s care, but she took him to speech therapy that helped him to speak. P.B. remarked that, although the therapy had enabled the child to speak "too much," he was still attending it.

The children faced potential emotional and physical dangers from appellant's choices, but there was evidence that she was learning to recognize and avoid dangerous situations. Many of her relationships with other adults had been tempestuous. She did not get along with P.B. but could not explain why. She had several altercations with P.B.'s daughters and son (who fathered her second child) and others, though she contended that she was the victim in some incidents in which others described her as the aggressor. Appellant estimated that she had gone to jail for assault five times.

Though appellant had used drugs and participated in violent behavior, evidence showed that she had engaged in rehabilitation and therapy that left her drug-free and more likely to

7

walk away from confrontation than before. The counselor who taught appellant anger management, protective parenting, and domestic violence awareness in 2013 said that appellant was very closely bonded with the children. The counselor credited appellant's cessation of marijuana smoking and her new prescribed medication as helping appellant to be less distrustful, withdrawn, and cautious and more positive, hopeful, and happy. Appellant started four dating relationships in the ten months before trial, stopping each of them after discovering that the men had histories of family violence and/or illegal drug use or distribution, including the man who allegedly hid jars of marijuana discovered in her dresser shortly before a visit by the children.[1] The counselor concluded that appellant ending risky relationships was a sign of growth because appellant recognized the problem and took action. Appellant's favorable behavioral changes caused her counselor to revise the diagnosis of schizophrenia. Appellant admitted, however, that she had stopped taking her prescribed medication for several months in 2014 but had resumed taking it before trial, and her counselor testified that appellant not taking prescribed medication would be concerning.

Testimony was mixed regarding whether appellant could recognize dangers to her children. Department workers testified that they had no safety concerns during appellant's supervised visits and that she was appropriate and affectionate with the children, but they were less confident in her ability to consistently make sound parenting choices over longer stretches of time. After a period of unsupervised visits, the Department reinstated supervision in part because appellant was keeping company with men whom she had not alerted the Department about, some of whom

---

[1] The record, however, included a profanity-riddled text from appellant to her conservatorship worker blaming the worker's discovery of the marijuana jars for causing appellant's boyfriend to break up with her.

8

had criminal records and histories of terminated parental rights and two of whom left marijuana or related paraphernalia at her home. Appellant's family support counselor testified that appellant did not recognize as a problem the presence of marijuana at her house even when it was within her children's reach.

The Department's planned for P.B. to adopt the children. Testimony was undisputed that they had bonded with her during their almost two years with her and were doing well, but there was some testimony that raised concerns about their safety. P.B. testified that she had tested negative for drug use five times and that she did not allow people under the influence of drugs to be around the children. P.B. testified that, if she adopted the children and her job ran late, her adult son—the middle child's father—and daughters would pick up the children and care for them. But there was evidence that her adult children used illegal drugs and participated in several of the domestic violence incidents that were cited as bases for termination of appellant's parental rights. P.B. said she does not get into violent confrontations with anyone, but a witness who was P.B.'s neighbor and appellant's friend testified that P.B. tended to go toward neighborhood conflicts instead of away, yelling that nobody messes with her family. The neighbor said that P.B. and her family tended to cause little incidents to become big brawls. The neighbor testified that P.B.'s parties for the children turned into adult parties with drinking that lasted until midnight. The neighbor testified that P.B.'s children are not safe caregivers for the children and that she would choose appellant to care for the children.

Appellant testified that she was prepared to take care of the children. She testified that she now sets boundaries for those around her who would be around her children and ends relationships when those boundaries are violated. She described herself as more stable since she was

9

living in one place and has a job, although records indicated that her job paid $71 per week. She said she had elementary and daycare locations lined up and that her new friends, who are more positive people, would help pick up the children if needed. The psychologist who evaluated appellant in May 2013 said that appellant's difficulty in parenting was significant and that she showed poor attachment to and understanding of her children. He had not seen appellant for eighteen months, however, and conceded that eight months of sobriety would be significant and that holding a job would be a sign of progress—both of which appellant had done.

The conservatorship worker recommended termination because she was uncertain that appellant could maintain or improve her stability and progress. She testified that, despite improvement in parenting skills, appellant sometimes needed cues to intervene with the children during visits or to prepare them, for example, for a walk in the heat. The conservatorship worker opined that keeping the children in permanent managing conservatorship would subject them to such stresses as constant insecurity of their home, repeated court appearances, and the challenge of background checks for everyone involved in sleepovers or school activities.

P.B. testified regarding steps she has taken to protect the children and herself. She said she has moved to another city to escape the "drama" of the area in Austin where she lived, such as appellant violating a restraining order that required her to be at least two hundred feet away from P.B., her home, and the children's daycare. When P.B. recognized that the eldest child was delayed in acquiring speech, she sought services for him and helped him catch up. P.B. testified that, when one boyfriend hit her, she broke up with him and obtained a restraining order against him. The conservatorship worker testified that adoption by P.B. served the children's best interest by continuing the stability P.B. provided and the services P.B. obtained. The trial court commented

10

that, even after termination P.B. could allow appellant to have a relationship with the children as P.B. had done with the now-terminated fathers of these children. She also testified that the children would have access to financial support from the State if they were adopted, in contrast to the absence of child support paid by any of their parents.

There was some evidence that the children's endangering circumstances were due to some circumstances beyond appellant's control. There was ample testimony that appellant had mental and emotional challenges grounded in basic functional deficits compounded by bad life experiences. She scored low on intelligence and common-sense tests. She had been sexually assaulted as a child, which may have contributed to her post-traumatic stress disorder and schizophrenia. Before her diagnosis and the prescription of psychotropic medications, she self-medicated using controlled substances and alcohol (at various points smoking ten blunts of marijuana, doing three to four lines of cocaine daily, and drinking three to four cups of vodka daily). Some combination of these factors generated visual and audio hallucinations of apparitions passing through her and voices calling her name. Some of these factors may have led her to make choices that involved her in inappropriate relationships and violent encounters. She had attempted to surmount these obstacles, but nevertheless had repeatedly gotten into relationships with men whose histories indicated that they posed a risk to the children and their environment.

Viewing the record as a whole, we conclude that the evidence is factually sufficient for the trial court to have concluded that clear and convincing evidence showed that termination of appellant's parental rights was in the children's best interest.

## CONCLUSION

We affirm the trial court's judgment terminating appellant's parental rights.

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Goodwin and Field

Affirmed

Filed:   May 1, 2015