

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-21-00100-CV

IN THE INTEREST OF R.C. AND K.C., CHILDREN

On Appeal from the County Court at Law
Lamar County, Texas
Trial Court No. 89895

Before Morriss, C.J., Stevens and Carter,* JJ.
Memorandum Opinion by Justice Carter

_____
*Jack Carter, Justice, Retired, Sitting by Assignment

MEMORANDUM OPINION

In the lawsuit brought by the Texas Department of Family and Protective Services (the Department), the trial court found that Father (1) knowingly placed or knowingly allowed his children, R.C. and K.C., to remain in conditions or surroundings that endangered their physical or emotional well-being,[1] (2) contumaciously refused to submit to a reasonable and lawful order made during the investigation of reports that R.C. and K.C. had been abused or neglected, and (3) knowingly engaged in criminal conduct that resulted in his conviction of an offense and confinement or imprisonment and inability to care for the children for not less than two years from the filing date of the Department's petition. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (I), (Q) (Supp.). As a result, after finding that it was in R.C.'s and K.C.'s best interests, the trial court terminated Father's parental rights to the children.[2]

On appeal, Father challenges the legal and factual sufficiency of the trial court's Ground D, I, and Q findings.[3] We conclude that the evidence was sufficient to support the trial court's Ground D finding that Father knowingly placed or allowed R.C. and K.C. to remain in conditions or surroundings that endangered their physical or emotional well-being. Because our conclusion is dispositive of this appeal, we need not review Father's remaining arguments as to Grounds I and Q. Consequently, we affirm the trial court's judgment.

---

[1]We use the children's initials and refer to their parents as Mother and Father to protect the children's confidentiality. *See* TEX. R. APP. P. 9.8(b)(2).

[2]Mother, whose parental rights were also terminated, is not a party to this appeal.

[3]Father does not challenge the trial court's best-interests finding.

## I. The Evidence at Trial

Mother and Father had two children together at the time of trial, one-year-old K.C. and four-year-old R.C. Diane Black, a family-based safety services worker, testified that she was assigned to the case in December 2019, after recently born K.C. tested positive for marihuana. According to Black, both Mother and Father tested positive for marihuana. In addition to K.C. and her brother R.C., Mother had three more children by other men in her care, D.P., J.J., and R.W. D.P., then three years old, tested positive for cocaine.[4] As a result, the Department found reason to believe that both Mother and Father had been neglectful in their supervision of D.P.

Father, who had a total of five children, told Black that "his [other] children had been involved in [Child Protective Services (CPS)] cases, that he was aware of situations that they were involved in that led to the CPS cases[,] but [that] he hadn't done anything about it." In a pending CPS case opened in Red River County in 2018, Father had tested positive for methamphetamine. Even so, Black provided a family-based safety plan to Father with the goal of fully reuniting him with R.C. and K.C.

Black testified that Father was ordered to participate in counseling, that he attended regularly, but that he did not make progress. According to Black, Father and Mother separated, and by March 31, 2020, Mother began living with a man named Nicholas Buster Jackson, who was a registered sex offender. Shortly thereafter, Mother signed a new family-based safety plan providing that she and the children would reside with a maternal cousin and would have no contact with Jackson.

---

[4]Neither Mother nor Father tested positive for cocaine.

On April 23, 2020, Father committed intoxication assault, injuring another driver, and sustaining serious injuries himself that required hospitalization until May. In July, the trial court held a hearing on the Department's "*Petition for Order to Participate in Services*" and ordered Father, who was present at the hearing, to participate in random drug testing, a psychological assessment, drug and alcohol assessments, individual and family therapy, and parenting classes, among other things. Even so, Black said that Father tested positive for marihuana in August and September 2020.

Black concluded that Father was on illegal drugs while he was actively involved with R.C. and K.C. during the pendency of the family-based services case. As a result, on October 23, 2020, the Department filed a petition to terminate Father's parental rights to R.C. and K.C., and in November 2020, the children were removed from Mother's and Father's care and placed with Father's cousin. After D.P.'s and R.W.'s maternal aunt received temporary managing conservatorship of D.P. and R.W. and J.J.'s father received temporary managing conservatorship over J.J., the Department's petition as to those children was severed from the case involving R.C. and K.C.

During the July term of the Lamar County grand jury, Father was indicted for intoxication assault with a motor vehicle. After the Department's petition was filed, Father was jailed pending the November 2020 trial for the offense. Father eventually pled guilty to intoxication assault with a motor vehicle and was sentenced to twelve years' imprisonment beginning May 28, 2021, after the trial court found that Father had previously committed another

4

felony.[5] Stephanie Tatum, the Department's caseworker, testified that Father was incarcerated during the period when she was assigned to the case and that he did not complete his court-ordered family service plan. Because he was incarcerated, Tatum assumed that Father was then drug-free. Even so, Tatum believed that termination of Father's parental rights was in the best interests of the children, who were thriving in the paternal cousin's care.[6] Tatum added that Mother was charged with aggravated assault with a deadly weapon in 2014, that Mother was convicted of two counts of endangering a child in 2015, that Mother's parental rights should also be terminated, and that the paternal cousin wished to adopt R.C. and K.C.

Misty Ricks, a Court Appointed Special Advocate, testified that both Mother and Father failed to complete family-based services. Ricks believed it was in the children's best interests that parental rights be terminated and that R.C. and K.C. remain with Father's cousin. Father's cousin also testified that she would care for the children and that it was in their best interests that Mother and Father's parental rights be terminated.

After hearing this evidence, the trial court terminated Mother and Father's parental rights. As to Father, the trial court found that termination of parental rights was supported by Grounds D, I, and Q of Section 161.001(b)(1) of the Texas Family Code.

---

[5]Father received 191 days of jail time credit.

[6]Tatum said that the children were living with Mother, not Father, during her assignment on the case, but that the case was in family-based services for nine months before the Department's petition to terminate parental rights was filed.

## II. Sufficient Evidence Supports the Trial Court's Ground D Finding

### A. Standard of Review

"The natural right existing between parents and their children is of constitutional dimensions." *In the Interest of E.J.Z.*, 547 S.W.3d 339, 343 (Tex. App.—Texarkana 2018, no pet.) (quoting *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985)). "Indeed, parents have a fundamental right to make decisions concerning 'the care, custody, and control of their children.'" *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). "Because the termination of parental rights implicates fundamental interests, a higher standard of proof—clear and convincing evidence—is required at trial." *Id.* (quoting *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014). "This Court is therefore required to 'engage in an exacting review of the entire record to determine if the evidence is . . . sufficient to support the termination of parental rights.'" *Id.* (quoting *In re A.B.*, 437 S.W.3d at 500)). "[I]nvoluntary termination statutes are strictly construed in favor of the parent." *Id.* (quoting *In re S.K.A.*, 236 S.W.3d 875, 900 (Tex. App.—Texarkana 2007, pet. denied) (quoting *Holick*, 685 S.W.2d at 20)).

"In order to terminate parental rights, the trial court must find, by clear and convincing evidence, that the parent has engaged in at least one statutory ground for termination and that termination is in the child's best interest." *Id.* (citing TEX. FAM. CODE ANN. § 161.001 (Supp.); *In re E.N.C.*, 384 S.W.3d 796, 798 (Tex. 2012)). "'Clear and convincing evidence' is that 'degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.'" *Id.* (quoting TEX. FAM. CODE ANN. §

6

101.007) (citing *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009)). "This standard of proof necessarily affects our review of the evidence." *Id.*

"In our legal sufficiency review, we consider all the evidence in the light most favorable to the findings to determine whether the fact-finder reasonably could have formed a firm belief or conviction that the grounds for termination were proven." *In re L.E.S.*, 471 S.W.3d 915, 920 (Tex. App.—Texarkana 2015, no pet.) (citing *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam); *In re J.L.B.*, 349 S.W.3d 836, 846 (Tex. App.—Texarkana 2011, no pet.)). "We assume the trial court, acting as fact-finder, resolved disputed facts in favor of the finding, if a reasonable fact-finder could do so, and disregarded evidence that the fact-finder could have reasonably disbelieved or the credibility of which reasonably could be doubted." *Id.* (citing *In re J.P.B.*, 180 S.W.3d at 573).

"In our review of factual sufficiency, we give due consideration to evidence the trial court could have reasonably found to be clear and convincing." *Id.* (citing *In re H.R.M.*, 209 S.W.3d 105, 109 (Tex. 2006) (per curiam)). "We consider only that evidence the fact-finder reasonably could have found to be clear and convincing and determine 'whether the evidence is such that a fact[-]finder could reasonably form a firm belief or conviction about the truth of the . . . allegations.'" *Id.* (quoting *In re H.R.M.*, 209 S.W.3d at 109 (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)) (citing *In re J.F.C.*, 96 S.W.3d 256, 264, 266 (Tex. 2002))). "If, in light of the entire record, the disputed evidence that a reasonable fact[-]finder could not have credited in favor of the finding is so significant that a fact[-]finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* (quoting *In re J.F.C.*, 96

7

S.W.3d at 266). In our analysis, "we must undertake 'an exacting review of the entire record with a healthy regard for the constitutional interests at stake.'" *Id.* (quoting *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (quoting *In re C.H.*, 89 S.W.3d at 26)).

"Despite the profound constitutional interests at stake in a proceeding to terminate parental rights, 'the rights of natural parents are not absolute; protection of the child is paramount.'" *Id.* (quoting *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) (quoting *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994))) (citing *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003)). "A child's emotional and physical interests must not be sacrificed merely to preserve parental rights." *Id.* (quoting *In re C.A.J.*, 459 S.W.3d 175, 179 (Tex. App.—Texarkana 2015, no pet.) (citing *In re C.H.*, 89 S.W.3d at 26)).

"Only one predicate finding under Section 161.001[b](1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *Id.* at 923 (quoting *In re O.R.F.*, 417 S.W.3d 24, 37 (Tex. App.—Texarkana 2013, pet. denied) (quoting *In re A.V.*, 113 S.W.3d at 362)) (citing *In re K.W.*, 335 S.W.3d 767, 769 (Tex. App.—Texarkana 2011, no pet.)). "Even so, in *In re N.G.*, the Texas Supreme Court held that due process demands that we review the evidence supporting findings under Grounds D and E when they are challenged on appeal because termination of parental rights under these Grounds 'may have implications for . . . parental rights to other children.'" *In re L.W.*, 609 S.W.3d 189, 195–96 (Tex. App.—Texarkana 2020, no pet.) (quoting *In re N.G.*, 577 S.W.3d 230, 234 (Tex. 2019) (per curiam)). As a result, in this case, we must "focus our analysis on Ground[] D." *Id.* at 196.

8

**B.      Analysis of the Trial Court's Ground D Finding**

"Subsection (b)(1)(D) permits a termination when the parent has 'knowingly placed or knowingly allowed the child[ren] to remain in conditions or surroundings which endanger the physical or emotional well-being of the child[ren].'" *In re L.W.*, 609 S.W.3d at 199 (quoting TEX. FAM. CODE ANN. § 161.001(b)(1)(D)). "'Endanger,' as used in the definition of Ground[] D . . ., 'means to expose to loss or injury; to jeopardize.'" *In re A.R.*, No. 06-20-00013-CV, 2020 WL 3865372, at *4 (Tex. App.—Texarkana July 9, 2020, no pet.) (mem. op.) (quoting *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). "Under subsection D, the child's environment, including the environment produced by the parent's conduct, is the source of endangerment to the child." *In re D.J.H.*, 381 S.W.3d 606, 613 (Tex. App.—San Antonio 2012, no pet.) (quoting *In re D.C.*, 128 S.W.3d 707, 715 (Tex. App.—Fort Worth 2004, no pet.)).

Here, Father admits that the children were endangered, but argues that it was because of Mother's actions. Thus, he complains that he did not *knowingly* place or *knowingly* allow R.C. and K.C. to remain in conditions or surroundings that endangered their physical or emotional well-being. As a result of Father's complaint, we focus our analysis on Father's knowing conduct.

Under a Ground D analysis, "we must examine the time before the children's removal to determine whether the environment itself posed a danger to [their] physical or emotional well-being." *In re L.C.*, 145 S.W.3d 790, 795 (Tex. App.—Texarkana 2004, no pet.). Children are "endangered when the environment creates a potential for danger that the parent is aware of, but disregards." *In re N.B.*, No. 06-12-00007-CV, 2013 WL 1605457, at *9 (Tex. App.—Texarkana

May 8, 2012, no pet.) (mem. op.). "A parent does not need to know for certain that the child is in an endangering environment . . . ." *In re A.C.D.*, No. 04-20-00370-CV, 2021 WL 111921, at *2 (Tex. App.—San Antonio Jan. 13, 2021, no pet.) (mem. op.) (quoting *In re I.N.D.*, No. 04-20-00121-CV, 2020 WL 2441375, at *3 (Tex. App.—San Antonio May 13, 2020, pet. denied)). "A parent's awareness of the potential for danger and a disregard of that risk is sufficient to show endangerment." *In re R.W.*, 627 S.W.3d 501, 511 (Tex. App.—Texarkana 2021, no pet.).

"[U]nlawful conduct by a parent . . . can create an environment that endangers the physical and emotional well-being of a child as required for termination under subsection (D)." *In re A.R.*, 2020 WL 3865372, at *4 (quoting *In re C.J.B.*, No. 05-19-00165-CV, 2019 WL 3940987, at *6 (Tex. App.—Dallas Aug. 21, 2019, no pet.) (mem. op.)). For this reason, "illegal drug use by a parent . . . supports the conclusion that the children's surroundings endanger their physical or emotional well-being." *In re L.E.S.*, 471 S.W.3d at 925; *see In re A.J.F.*, No. 07-20-00242-CV, 2021 WL 423442, at *2 (Tex. App.—Amarillo Feb. 4, 2021, no pet.) (Mother's illegal drug use at child's birth was sufficient to show that parent placed the child in conditions or surroundings that endangered the child's physical well-being); *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.) ("parental and caregiver illegal drug use and drug-related criminal activity likewise supports the conclusion that the children's surroundings endanger their physical or emotional well-being"). "[S]ubsection (D) permits termination [of parental rights] based on a single act or omission [by the parent]." *In re L.C.*, 145 S.W.3d at 797; *see In re A.B.*, 125 S.W.3d 769, 776 (Tex. App.—Texarkana 2003, pet. denied).

10

Prior to the children's removal, Mother and Father were in a relationship and cared for R.C., D.P., J.J., and R.W. In December 2019, K.C. tested positive for marihuana at birth and both Mother and Father tested positive for the same drug at that time. Also, because D.P. was in Mother's and Father's care and tested positive for cocaine, the Department also found reason to believe that Father was neglectful in his supervision of D.P.[7] Even so, Father argues that, by March 2020, "[Father] no longer lived with nor attended to the children." Yet, because the children all lived together, the evidence of Father's actions prior to his March 2020 separation from Mother showed that the children were in an environment that exposed them to drug use and neglectful supervision while under Father's care. *See In re A.J.F.*, 2021 WL 423442, at *2; *In re L.E.S.*, 471 S.W.3d at 925; *In re J.T.G.*, 121 S.W.3d at 125.

Additional conduct by Father committed before R.C. and K.C. were removed after the Department's petition was filed in October 2020 also supported the trial court's Ground D finding. Black's testimony that Father tested positive for methamphetamine in 2018 and Father's positive drug test results during the pendency of the family-based services case showed that Father had a history with illegal drugs. According to Black, Father was taking drugs while actively involved with his children. Father's illegal drug use exposed R.C. and K.C. to the possibility that Father could be impaired or imprisoned. *See In re A.R.*, 2020 WL 3865372, at *4 (discussing Ground E). Indeed, before the filing of the Department's petition, Father committed intoxication assault with a vehicle and seriously injured himself as a result, rendering him hospitalized, unable to care for R.C. and K.C., and unable to demonstrate that he could provide

---

[7]Even though D.P. was not Father's child, the trial court entered orders in July 2020 requiring Father to participate in services after finding that it was necessary for the welfare and safety of all the children, including D.P.

the children with a safe environment by completing the family-based safety services plan put in place before the children's removal.[8]

Based on the evidence presented, a reasonable fact-finder could have concluded that the environment created by Father's conduct, including his drug use, created a potential for danger to R.C.'s and K.C.'s physical and emotional well-being that Father was aware of but disregarded. Accordingly, we find the evidence both legally and factually sufficient to support the trial court's finding under Ground D. As a result, we overrule Father's first point of error, which is dispositive of this appeal.

## III.    Conclusion

We affirm the trial court's judgment.


Jack Carter
Justice

Date Submitted:    January 12, 2022
Date Decided:    January 18, 2022

---

[8]The record also established that Father was convicted of aggravated assault in 1997 and possession of a firearm by a felon in 2005.

12